# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| BELINDA HOUSEY, on behalf of herself and all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>PROCTER & GAMBLE COMPANY,<br><br>        Defendant. | Civil Case No. 1:21-cv-02286-NRB<br><br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANT THE PROCTER & GAMBLE COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT**

**COVINGTON & BURLING LLP**
Henry Liu (*pro hac vice*)
Andrew Soukup (*pro hac vice*)
One City Center
850 Tenth Street, NW
Washington, DC 20001
hliu@cov.com
asoukup@cov.com
(202) 662-6000

Gawon Go
The New York Times Bldg
620 Eighth Avenue
New York, NY 10018
ggo@cov.com
(212) 841-1000

*Attorneys for Defendant*
*The Procter & Gamble Company*

Dated:  July 27, 2021

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

BACKGROUND ..................................................................................................................2

PROCEDURAL STANDARD ............................................................................................5

ARGUMENT .......................................................................................................................5

I.     ALL OF PLAINTIFF'S CLAIMS SUFFER FROM OVERLAPPING DEFECTS...........5

     A.     Plaintiff Fails to Allege Which Product She Purchased. ..........................................6

     B.     Plaintiff Fails to Allege That P&G Charcoal Toothpaste Labels Are Materially
           Misleading............................................................................................................6

     C.     Plaintiff's Claims Are Defective Because They Rely on a "Lack of
           Substantiation" Theory. ......................................................................................12

     D.     Plaintiff Cannot Challenge Statements on a Website that She Never Saw............14

II.    THE "STATE CONSUMER FRAUD ACTS" CLAIM SHOULD BE DISMISSED
       (COUNT 1). ...................................................................................................................15

III.   THE GBL CLAIMS SHOULD BE DISMISSED (COUNT 2 & 3)................................17

IV.   THE EXPRESS WARRANTY CLAIMS SHOULD BE DISMISSED (COUNT 4)........19

V.    THE FRAUD CLAIM SHOULD BE DISMISSED (COUNT 5). ...................................22

CONCLUSION....................................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adkins v. Apple, Inc.*,
   147 F. Supp. 3d 913 (N.D. Cal. 2014) ...................................................................21

*In re Aluminum Warehousing Antitrust Litig.*,
   833 F.3d 151 (2d Cir. 2016).........................................................................................15

*Alvarez v. Chevron Corp.*,
   656 F.3d 925 (9th Cir. 2011) .....................................................................................21

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...................................................................................5, 10, 11, 15

*Baldwin v. Star Sci., Inc.*,
   2016 WL 397290 (N.D. Ill. Feb. 2, 2016) ...............................................................21

*Baron v. Pfizer, Inc.*,
   840 N.Y.S.2d 445 (App. Div. 2007) .........................................................................18

*Barton v. Pret A Manger (USA) Ltd.*,
   2021 WL 1664319 (S.D.N.Y. Apr. 27, 2021)..........................................................21

*Bassaw v. United Industries Corp.*,
   482 F. Supp. 3d 80 (S.D.N.Y. 2020).........................................................................22

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).....................................................................................................5

*Bennett v. United States Tr. Co.*,
   770 F.3d 308 (2d Cir. 1985).......................................................................................20

*Board-Tech. Elec. Co., Ltd. v. Eaton Elec. Holdings LLC*,
   2017 WL 4990659 (S.D.N.Y. Oct. 31, 2017) ...........................................................6

*Bronson v. Johnson & Johnson, Inc.*,
   2013 WL 1629191 (N.D. Cal. Apr. 13, 2013) .........................................................13

*Catalano v. BMW of N. Am., LLC*,
   167 F. Supp. 3d 540 (S.D.N.Y. 2016).......................................................................20

*Chavez v. Wal-Mart Stores, Inc.*,
   2014 WL 12591252 (C.D. Cal. Jun. 2, 2014) ..........................................................16

*Chevron Corp. v. Donzinger*,
    2013 WL 3879702 (S.D.N.Y. Jul. 29, 2013) ................................................................3

*Chufen Chen v. Dunkin' Brands, Inc.*,
    954 F.3d 492 (2d Cir. 2020).........................................................................7, 17

*Dash v. Seagate Tech. (U.S.) Holdings, Inc.*,
    27 F. Supp. 3d 357 (E.D.N.Y. 2014) ...........................................................18, 24

*Diebler v. SanMedica Int'l, LLC*,
    488 F. Supp. 3d 169 (D.N.J. 2020) ...................................................................13

*DiMuro v. Clinique Laboratories, LLC*,
    572 F. App'x 27 (2d Cir. Jul. 10, 2014)..............................................................11

*Douyon v. N.Y. Med. Health Care, P.C.*,
    894 F. Supp. 2d 245 (E.D.N.Y. 2012) ...............................................................14

*Eckler v. Wal-Mart Stores, Inc.*,
    2012 WL 5382218 (S.D. Cal. Nov. 1, 2012) .......................................................13

*Evans v. DSW, Inc.*,
    2017 WL 7058232 (C.D. Cal. Sept. 14, 2017) ....................................................21

*Fernandez v. Zoni Language Ctrs., Inc.*,
    2016 WL 2903274 (S.D.N.Y. May 18, 2016) .......................................................8

*Fin. Guar. Ins. Co. v. Putnam Advisory Co.*,
    783 F.3d 395 (2d Cir. 2015)..........................................................................7, 23

*Fink v. Time Warner Cable*,
    714 F.3d 739 (2d Cir. 2013)...............................................................................7

*In re Fyre Festival*,
    399 F. Supp. 3d 203 (S.D.N.Y. 2019)................................................................23

*Gaidon v. Guardian Life Ins. Co. of Am.*,
    94 N.Y.2d 330 (1999) .......................................................................................7

*In re GNC Corp.*,
    789 F.3d 505 (4th Cir. 2015) ..............................................................................8

*Goldemberg v. Johnson & Johnson Consumer Co.*,
    8 F. Supp. 3d 467 (S.D.N.Y. 2014) ...................................................................14

*Goshen v. Mut. Life Ins. Co. of N.Y.*,
    98 N.Y.2d 314 (2002) ..................................................................................7, 17

iii

*Hesse v. Godiva Chocolatier, Inc.*,
    463 F. Supp. 3d 453 (S.D.N.Y. 2020)................................................................7, 23

*In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig.*,
    1 F. Supp. 3d 34 (E.D.N.Y. 2014) ........................................................................17

*Hughes v. Ester C Co.*,
    930 F. Supp. 2d 439 (E.D.N.Y. 2013) ............................................................13, 14

*Izquierdo v. Mondelez Int'l, Inc.*,
    2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016) ........................................................19

*Jones v. Apple, Inc.*,
    2016 WL 11647699 (S.D. Ill. Aug. 22, 2016) ......................................................21

*Jurgensen v. Felix Storch, Inc.*,
    2012 WL 2354247 (S.D.N.Y. Jun. 14, 2012) ........................................................16

*Kardovich v. Pfizer, Inc.*,
    97 F. Supp. 3d 131 (E.D.N.Y. 2015) ................................................................9, 12

*Koehler v. Litehouse, Inc.*,
    2012 WL 6217635 (N.D. Cal. Dec. 13, 2012) ......................................................16

*Kohen v. Pac. Inv. Mgmt. Co.*,
    571 F.3d 672 (7th Cir. 2009) ................................................................................16

*Langan v. Johnson & Johnson Consumer Co.*,
    897 F.3d 88 (2d Cir. 2018)....................................................................................16

*Lerner v. Fleet Bank, N.A.*,
    459 F.3d 273 (2d Cir. 2006)..................................................................................23

*Lugones v. Pete & Gerry's Organic, LLC*,
    440 F. Supp. 3d 226 (S.D.N.Y. 2020)..................................................7, 14, 20, 21

*Manuel v. Pepsi-Cola Co.*,
    763 F. App'x 108 (2d Cir. Mar. 15, 2019) ..........................................................10

*Marshall v. Hyundai Motor Am.*,
    334 F.R.D. 36 (S.D.N.Y. 2019) ............................................................................18

*McCrary v. Elations Co.*,
    2013 WL 6402217 (C.D. Cal. Apr. 23, 2013) ........................................................9

*McGarvey v. Penske Auto. Group*,
    639 F. Supp. 2d 450 (D.N.J. 2009) ......................................................................15

*Mizel Roth IRA on Behalf of Consol. Asset Funding 3 LP v. Unified Cap. Partners 3 LLC*,
2021 WL 1164439 (S.D.N.Y. Mar. 25, 2021) ........................................................10

*Nelson v. MillerCoors, LLC*,
246 F. Supp. 3d 666 (E.D.N.Y. 2017) ................................................................17

*Nicosia v. Amazon.com, Inc.*,
834 F.3d 220 (2d Cir. 2016).............................................................................5

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*,
85 N.Y.2d 20 (1995) .......................................................................................7

*Patellos v. Hello Products, LLC*,
2021 WL 827769 (S.D.N.Y. Mar. 4, 2021) ...................................................12, 22

*Prickett v. New York Life Ins. Co.*,
896 F. Sup. 2d 236 (S.D.N.Y. 2012).................................................................23

*Quinn v. Walgreen Co.*,
958 F. Supp. 2d 533 (S.D.N.Y. 2013)................................................................20

*Quintana v. B. Braun Med. Inc.*,
2018 WL 3559091 (S.D.N.Y. July 24, 2018) ......................................................14

*Robainas v. Metro. Life Ins. Co.*,
2015 WL 5918200 (S.D.N.Y. Oct. 9, 2015) .......................................................16

*Rodriguez v. Hanesbrand Inc.*,
2018 WL 2078116 (E.D.N.Y. Feb. 20, 2018)......................................................24

*Rodriguez v. It's Just Lunch Int'l*,
2018 WL 3733944 (S.D.N.Y. Aug. 6, 2018) .......................................................18

*Scheuerman v. Nestle Healthcare Nutrition, Inc.*,
2012 WL 2916827 (D.N.J. Jul. 12, 2012)...........................................................13

*Segedie v. Hain Celestial Grp., Inc.*,
2015 WL 2168374 (S.D.N.Y. May 7, 2015) .........................................................6

*Small v. Lorillard Tobacco Co.*,
94 N.Y.2d 43 (1999) ......................................................................................17

*Steel Co. v. Citizens for a Better Env.*,
523 U.S. 83 (1998).........................................................................................16

*Thrasher-Lyon v. Ill. Farmers Ins. Co.*,
861 F. Supp. 3d 898 (N.D. Ill. 2012) ................................................................16

*Toback v. GNC Holdings, Inc.*,
   2013 WL 5206103 (S.D. Fla. Sept. 13, 2013) .........................................................9

*Tomasino v. Estee Lauder Cos.*,
   44 F. Supp. 3d 251 (E.D.N.Y. 2014) .....................................................................22

*In re Trilegiant Corp.*,
   2014 WL 1315244 (D. Conn. Mar. 28, 2014) ......................................................15

*Twohig v. Shop-Rite Supermarkets, Inc.*,
   2021 WL 518021 (S.D.N.Y. Feb. 11, 2021) .........................................................11

*Tyman v. Pfizer, Inc.*,
   2017 WL 6988936 (S.D.N.Y. Dec. 27, 2017) .......................................................22

*Wells Fargo Bank, N.A. v. Bank of America, N.A.*,
   2013 WL 372149 (S.D.N.Y. Jan. 21, 2013) ..........................................................14

**Statutes**

Mass. Gen. Laws ch. 93A, § 1(b) ...................................................................................16

N.Y. Gen. Bus. L. § 349 .....................................................................................5, 7, 17, 18

N.Y. Gen. Bus. L. § 350 .....................................................................................5, 7, 17, 18

N.Y. U.C.C. § 2-607(3)(a) ...........................................................................................5, 19, 20

**Other Authorities**

Fed. R. Evid. 201(b).............................................................................................................8

Fed. R. Civ. P. 9(b) .......................................................................................................22, 23

## INTRODUCTION

Plaintiff Belinda Housey filed this class action claiming that The Procter & Gamble Company ("P&G") made misleading statements about its toothpastes containing charcoal. The amended complaint challenges three general phrases that appear on a wide range of P&G's toothpaste labels—"enamel safe whitening," "gently cleans," and "healthier gums." Each of these common statements plainly relate to the benefits of using these toothpastes in general, and not anything about the charcoal ingredient in particular. Plaintiff nevertheless asserts that these three statements are misleading because P&G's toothpastes cannot, for example, "gently clean" when charcoal is included as an ingredient in the products.

The problem with Plaintiff's theory is that there are no facts in the complaint to support it. Plaintiff alleges nothing to suggest that adding charcoal to P&G's toothpastes makes them unsafe for consumers to use. She does not allege, for example, that a toothpaste with charcoal cannot "gently clean" or promote "healthier gums" for consumers. Nor does she explain how adding charcoal as an ingredient means that the *other* ingredients in P&G's toothpastes cannot provide "enamel safe whitening."

Instead of pleading basic facts to support her claim, Plaintiff relies on a series of "scientific studies" that purport to show that charcoal does not provide any special health benefits to consumers. *E.g.*, Am. Compl. ¶¶ 8, 48. But those studies—none of which involved P&G's toothpastes—are irrelevant to what Plaintiff is trying to allege here. None of the studies demonstrates that adding charcoal makes the *entire toothpaste product* unfit for consumers to use. In any event, numerous courts have held that the mere absence of evidence to substantiate a representation—a so-called "lack of substantiation theory"—cannot support the claims asserted in the complaint, and this case provides no reason to chart a different course. These defects are fatal to all of Plaintiff's claims.

1

Plaintiff's claims should be dismissed for other reasons, as well. The claim for violations of ten "State Consumer Fraud Acts" fails because Plaintiff makes no attempt to allege the elements of those claims or demonstrate that, as a New York resident, she has the right to sue under the laws of states other than New York. The claims under New York's General Business Law ("GBL") fail because Plaintiff does not allege that she paid any premium to buy charcoal toothpaste over non-charcoal toothpaste. Instead, the third-party websites cited in the complaint make clear that charcoal and non-charcoal toothpastes cost the exact same amount. The claims for breach of express warranty should be dismissed because Plaintiff did not provide timely pre-suit notice of that claim. And Plaintiff cannot plead a fraud claim because she has not alleged that P&G made the challenged statements—"enamel safe whitening," "gently cleans," and "healthier gums"—with the intent to defraud.

For these reasons and the additional reasons below, the amended complaint should be dismissed.

## BACKGROUND

Plaintiff filed this nationwide class-action lawsuit challenging how P&G's toothpastes containing charcoal are marketed. The complaint focuses on three particular statements on Crest toothpaste labels that are supposedly misleading—"enamel safe whitening," "healthier gums," and "gently cleans." Am. Compl. ¶¶ 4, 5, 12-13.

All of the challenged statements refer to the benefits consumers get from using Crest toothpastes *as a whole*. Take, for example, the product "Crest 3D White" with charcoal. Plaintiff challenges the statement "enamel safe whitening" on the label of that product. But that statement is located directly under the phrase "Fluoride Anticavity *Toothpaste*." *Id.* ¶ 45. The statement has no apparent relationship to the charcoal ingredient.



The same is true for "Crest 3D White Whitening Therapy Charcoal with Hemp Seed Oil."  The phrase "gently cleans" on the label has no connection to the charcoal ingredient.  Instead, the phrase appears as part of a full statement that reads:  "Our *Toothpaste* Gently Cleans & Removes Stains."  *Id.* ¶ 45 (emphasis added).



Similarly, the label for "Crest Pro Health Gum Detoxify" contains no statements about the health benefits of charcoal.  Instead, the phrase "healthier gums" is part of a statement that reads: "Healthier Gums & Brighter Teeth."  *Id.* ¶ 45.  And that statement appears below the phrase "Fluoride *Toothpaste* For Anticavity and Antigingivitis."  *Id.* (emphasis added).



As these labels make clear, the three statements challenged by Plaintiff are about the benefits of using Crest toothpaste, as opposed to some claim about some special benefits from the charcoal ingredient.

    Plaintiff nevertheless asserts that "these claims are false not because they are made possible by the addition of charcoal but because they are made *impossible* by the addition of charcoal."

ECF No. 18 at 1 (emphasis in original); *see also* Am. Compl. ¶¶ 49-50.  Based on this theory, Plaintiff brings claims on behalf of a putative nationwide class for (i) violations of New York's GBL §§ 349 and 350, Am. Compl. ¶¶ 151-164; (ii) violations of "State Consumer Fraud Acts" of ten states, *id.* ¶¶ 117-124; (iii) breach of express warranty claims under New York's Uniform Commercial Code and common law, *id.* ¶¶ 125-150; and (iv) intentional misrepresentation and fraud, *id.* ¶¶ 165-173.  Plaintiff seeks, among other relief, recovery of either "the out-of-pocket purchase price" she paid or the "premium price" she allegedly paid for Crest toothpaste containing charcoal over "other products by P&G that do not contain charcoal."  *Id.* ¶ 104.

## PROCEDURAL STANDARD

"To survive a motion to dismiss," a complaint must "'state a claim to relief that is plausible on its face,'" *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense," *Iqbal*, 556 U.S. at 679.  "A pleading that offers labels and conclusions or 'a formulaic recitation of the elements of a cause of action will not do." *Id.* at 678 (quotation marks omitted).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (quotation marks omitted).  Instead, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  This standard is intended to expose pleading deficiencies "at the point of minimum expenditure of time and money by the parties and the court." *Id.* at 558 (quotation marks omitted).

## ARGUMENT

## I.    ALL OF PLAINTIFF'S CLAIMS SUFFER FROM OVERLAPPING DEFECTS.

Having taken the opportunity to amend her complaint, Plaintiff still fails to identify which P&G product she supposedly purchased or which representations she personally viewed.  The

representations that the complaint *does* challenge are not false or misleading.

**A.      Plaintiff Fails to Allege Which Product She Purchased.**

Plaintiff's claims face a threshold problem:  she fails to identify the particular P&G toothpaste she purchased.  The complaint alleges that Plaintiff "purchased the Crest 3D White Whitening Toothpaste with Charcoal."  Am. Compl. ¶ 22.  P&G does not offer any such product.  An internet search does not identify any product by that brand name.  And the three labels referenced in the complaint—"Crest 3D White" with charcoal, "Crest 3D White Whitening Therapy Charcoal with Hemp Seed Oil," and "Crest Pro Health Gum Detoxify" with charcoal, *see id.* ¶ 45—do not match the name of the product that Plaintiff allegedly purchased.

Plaintiff's "refusal to specify the particular products [purchased]" leaves P&G only to guess that "[s]omewhere in this series of products are those that were specifically [purchased]." *Board-Tech. Elec. Co., Ltd. v. Eaton Elec. Holdings LLC*, 2017 WL 4990659, at *5 (S.D.N.Y. Oct. 31, 2017).  Such allegations are insufficient to give P&G basic notice of Plaintiff's claims, or to establish that Plaintiff has standing to challenge any of the products in the complaint.  *See id.* (dismissing false advertising claim because plaintiff failed to specify the precise "product(s) within a broader product line" that it allegedly purchased); *Segedie v. Hain Celestial Grp., Inc.*, 2015 WL 2168374, at *12 (S.D.N.Y. May 7, 2015) (plaintiffs may not bring consumer-protection claims based on unidentified products).

**B.      Plaintiff Fails to Allege That P&G Charcoal Toothpaste Labels Are Materially Misleading.**

Even assuming this Court permits Plaintiff to clarify *which* product she purchased, Plaintiff's claims still fail because she does not plausibly allege that P&G made a false or misleading statement.  The amended complaint focuses on three representations on the labels of different Crest toothpaste products—"enamel safe whitening," "gently cleans," and "healthier

gums."

Under New York law, all of Plaintiff's claims require allegations that a defendant made a false, misleading, or inaccurate statement.[1]  For purposes of a GBL and warranty claim, a false or misleading statement is one that is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 26 (1995); *see also Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 469 (S.D.N.Y. 2020) (warranty claim requires a misrepresentation "material to a reasonable consumer" (citation omitted)).  Fraud, however, requires a false statement—and "[a] practice may carry the capacity to mislead or deceive a reasonable person but not be fraudulent."  *Gaidon v. Guardian Life Ins. Co. of Am.*, 94 N.Y.2d 330, 348 (1999).  "It is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013).

Plaintiff does not plead facts demonstrating that the three challenged statements—"gently clean," "heathier gums," and "enamel safe whitening"—are false or misleading in any fashion. According to Plaintiff, these statements "are false not because they are made possible by the addition of charcoal but because they are made *impossible* by the addition of charcoal."  ECF No. 18 at 2; *see also* Am. Compl. ¶¶ 48-50.  The problem for Plaintiff, however, is that the complaint lacks any factual allegations that the inclusion of charcoal in toothpaste renders the phrases

---

[1]    *See Fin. Guar. Ins. Co. v. Putnam Advisory Co.*, 783 F.3d 395, 402 (2d Cir. 2015) (fraud claim requires "a material misrepresentation or omission of fact"); *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 500 (2d Cir. 2020) (GBL § 349 claim requires a "deceptive act[]"); *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 n.1 (2002) ("The standard for recovery under [GBL] § 350, while specific to false advertising, is otherwise identical to section 349."); *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 244 (S.D.N.Y. 2020) (warranty claims require "a material statement amounting to a warranty" and "breach of this warranty" (emphasis omitted)).

misleading as applied to the whole toothpaste product.  For example, there are no allegations that the addition of charcoal renders the entire Crest toothpaste product unsuitable to "gently clean" teeth or promote "healthy gums."  To the contrary, the labels of P&G's non-charcoal Crest toothpastes contain the exact same three statements that Plaintiff challenges in this case, *id.* ¶¶ 4, 22, 88,[2] and Plaintiff concedes that P&G's "otherwise similar" non-charcoal toothpastes provide "basic safety and oral health maintenance," *id.* ¶ 95.

Courts have dismissed lawsuits challenging statements that refer to the whole product when the underlying factual allegations relate solely to a particular ingredient.  For example, in *In re GNC Corp.*, 789 F.3d 505 (4th Cir. 2015), the plaintiffs alleged that joint health supplements sold by GNC and Rite Aid were deceptively marketed because two ingredients—glucosamine and chondroitin—made the supplements ineffective.  *Id.* at 510-11.  The Fourth Circuit affirmed the dismissal of the misrepresentation claims (including claims under the GBL) because "the challenged representations—including 'supports improved joint health,' 'protects joints,' 'joint comfort,' and 'rebuilds cartilage'—refer to the products as a whole."  *Id.* at 516.  As the court explained, "Plaintiffs failed to allege that *all* of the purportedly actively ingredients in each product

---

[2]    *See, e.g.*, *Crest 3D White, Whitening Toothpaste Deep Clean*, https://crest.com/en-us/products/toothpaste/crest-3d-white-whitening-toothpaste-deep-clean (enamel safe whitening); *Crest 3D White Stain Eraser Whitening Toothpaste Icy Clean*, https://crest.com/en-us/products/toothpaste/crest-3d-white-stain-eraser-whitening-toothpaste-icy-clean (same); *Crest 3D White Brilliance Blast Whitening Toothpaste*, https://crest.com/en-us/products/toothpaste/crest-3d-white-brilliance-blast-whitening-toothpaste (same); *Crest 3D White, Whitening Toothpaste Glamorous White*, https://crest.com/en-us/products/toothpaste/crest-3d-white-glamorous-white-toothpaste (same); *Crest Gum Detoxify Deep Clean Toothpaste*, https://crest.com/en-us/products/toothpaste/crest-gum-detoxify-deep-clean-toothpaste (healthier gums); *Crest Gum and Breath Purify Deep Clean Toothpaste*, https://crest.com/en-us/products/toothpaste/crest-gum-breath-purify-deep-clean-toothpaste (same).  The court may take judicial notice of the labels of non-charcoal Crest toothpaste products.  *See* Fed. R. Evid. 201(b); *see Fernandez v. Zoni Language Ctrs., Inc.*, 2016 WL 2903274, at *3 (S.D.N.Y. May 18, 2016) (relying on council website listing the learning centers at issue as being accredited), *aff'd*, 858 F.3d 45 (2d Cir. 2017).

are ineffective" and thus do not "adequately plead falsity of the representations regarding the products as a whole." *Id.*  Other courts have reached the same conclusion.  *See Toback v. GNC Holdings, Inc.*, 2013 WL 5206103, at *5 (S.D. Fla. Sept. 13, 2013) (allegations regarding the inefficacy of two ingredients do not plausibly suggest that the product "*as a whole* does not function as advertised"); *McCrary v. Elations Co.*, 2013 WL 6402217, at *5 (C.D. Cal. Apr. 23, 2013) (dismissing claims regarding overall formulation of supplement when plaintiff's allegations were focused on particular ingredients).

Plaintiff cannot overcome these analogous cases by citing third-party publications concerning the purported benefits of charcoal in dental products.  Am. Compl. ¶¶ 32-39.  As a threshold matter, none of those publications analyzed the P&G toothpaste products at issue in the complaint, so they cannot establish that is anything misleading about the labels on those products. *See Kardovich v. Pfizer, Inc.*, 97 F. Supp. 3d 131, 140 (E.D.N.Y. 2015) (rejecting "scientific studies" as sufficient to support a plausible misrepresentation claim when the studies do not relate to the particular statements or products challenged).

In any event, none of the publications relates to Plaintiff's claim here:  that adding charcoal to toothpaste renders the entire toothpaste unsafe or unsuitable for consumer use.  Instead, the publications address the wholly different question of whether charcoal provides *additional* health benefits to consumers—a claim that P&G has never made, and a claim that Plaintiff does not pursue.  For example, Plaintiff cites an article from the British Dental Journal, but that article considered whether there is "evidence to support claims" about the unique benefit of charcoal in dental products.[3]  Similarly, Plaintiff cites a literature review in the Journal of the American Dental

---

[3]        Linda H. Greenwall et al., *Charcoal-Containing Dentifrices*, 226 BDJ 697, 698 (2019) (cited at Am. Compl. ¶ 37).

Association, but that review looked at the efficacy of the charcoal ingredient in dental products and found that "[l]arger-scale and well-designed studies are needed to establish conclusive evidence."[4]   And the Academy of General Dentistry study has nothing to do with charcoal toothpaste at all, but instead examined the effect of brushing teeth using "[o]ne capsule of Activated Charcoal mixed with 1 mL of water."[5]   When, as here, "a document relied on in the complaint contradicts allegations in the complaint, the document . . . control[s], and the court need not accept the allegations in the complaint as true."  *Mizel Roth IRA on Behalf of Consol. Asset Funding 3 LP v. Unified Cap. Partners 3 LLC*, 2021 WL 1164439, at *1 (S.D.N.Y. Mar. 25, 2021) (Buchwald, J.).  And the fact that "[n]one of the studies purports to establish a causal relationship between" the addition of charcoal to toothpaste and any harm to consumers "to a degree that is sufficiently strong" means Plaintiff cannot rely on these publications to establish that there is anything misleading about P&G's toothpaste labels.  *Manuel v. Pepsi-Cola Co.*, 763 F. App'x 108, 109 (2d Cir. Mar. 15, 2019) (reaching similar conclusion in case involving diet soda).

Plaintiff's contention that the American Dental Association ("ADA") has not yet granted a "Seal of Acceptance" to any toothpaste with charcoal does not help Plaintiff, either.  *See* Am. Compl. ¶¶ 40–44.  Although Plaintiff asks this Court to infer that the *absence* of an ADA seal means that a toothpaste is ineffective or harmful, she offers no facts to support that inference. *Iqbal*, 556 U.S. at 679.[6]   Nor would any such argument be plausible given the ADA's own

---

[4]      John K. Brooks et al., *Charcoal and Charcoal-Based Dentifrices*, 148 JADA 661, 661 (2017) (cited at Am. Compl. ¶ 34).

[5]      Brantley McCarty et al., *Activated Charcoal as a Whitening Dentifrice*, Presented at Academy of General Dentistry 2015 Annual Meeting, June 18–21, 2015, San Francisco, CA, *available at* https://www.epostersonline.com/agd2015/node/72 (last accessed July 13, 2021) (cited at Am. Compl. ¶ 33).

[6]      For example, not all dental products are even *eligible* for the ADA Seal of Acceptance— the ADA does not award the Seal to any products that are used by dentists.  *See Seal of Acceptance FAQ*, ADA,  https://www.ada.org/en/science-research/ada-seal-of-acceptance/ada-seal-faq  (last

statement that (i) participation in the ADA Seal program is not mandatory, and (ii) the rigorous standards imposed by the ADA's "Seal of Acceptance" program **exceed those imposed by law**. *See What Is the ADA Seal of Acceptance*, MouthHealthy.org, Brought to You by the ADA, https://www.mouthhealthy.org/en/ada-seal-products/what-is-the-ada-seal (last visited July 18, 2021) ("[T]o earn the Seal, companies are often asked to meet higher standards than what is required by law.").

Finally, Plaintiff cannot establish that P&G's toothpaste labels are misleading due to her own experience using charcoal toothpastes. As an initial matter, Plaintiff's allegations about her use of charcoal toothpastes are hopelessly vague. Plaintiff asserts that "after a period of use" she came to believe that "the Charcoal Toothpaste was actually abrading her enamel, and is not safe for use." Am. Compl. ¶ 102. But the complaint does not say how long Plaintiff used a charcoal toothpaste, why she believed that the product was "abrading" her teeth, how the product was "not safe," or why she (as opposed to her dentist) was qualified to reach those conclusions. *See Iqbal*, 556 U.S. at 681 (conclusory allegations are entitled to no weight). Regardless, even accepting Plaintiff's personal experience at face value, it is not enough to "plausibly allege that a 'label might be conceivably be misunderstood by some few consumers.'" *Twohig v. Shop-Rite Supermarkets, Inc*., 2021 WL 518021, at *3 (S.D.N.Y. Feb. 11, 2021) (quotation omitted). Instead, Plaintiff must "'plausibly allege that a *significant portion* of the general consuming public or of targeted customers, acting reasonably in the circumstances, could be misled.'" *Id.* (emphasis added); *see also DiMuro v. Clinique Labs., LLC*, 572 F. App'x 27, 32 (2d Cir. Jul. 10, 2014) (nothing misleading about marketing that "accurately depicts the average results consumers may

visited June 3, 2021). Taken to its logical conclusion, Plaintiff's argument would mean that all such products are therefore misleadingly labeled. That cannot be the case.

achieve").  No such allegations appear in the complaint.

For all those reasons, this case is different from *Patellos v. Hello Products, LLC*, 2021 WL 827769 (S.D.N.Y. Mar. 4, 2021), where another judge in this Court allowed claims against a different charcoal toothpaste manufacturer to proceed past a motion to dismiss.  Unlike Plaintiff in this case, the *Patellos* plaintiff asserted claims based on "representations that the activated-charcoal ingredient had *special properties* that made it worthwhile to pay a price premium for Hello toothpaste."  *Id.* at *2 (emphasis added).  For example, the manufacturer represented that "our activated charcoal toothpaste whitens naturally and gently," and that consumers benefit from the "detoxifying and adsorptive properties of activated charcoal."  *Id.*; *see also id.* at *4 (citing statements that "charcoal toothpastes have been specifically formulated to be gentle" and "charcoal adsorb the odors that cause bad breadth").  Here, by contrast, Plaintiff does not challenge any statement by P&G about the "special properties" of charcoal.  To the contrary, Plaintiff's claims are predicated on the theory that the addition of charcoal renders the entire toothpaste product unsuitable and unsafe for consumers.  *See* ECF No. 18 at 1.  None of the facts pleaded in the complaint support that theory.

## C.    Plaintiff's Claims Are Defective Because They Rely on a "Lack of Substantiation" Theory.

Plaintiff's claims face a second threshold defect:  they improperly rely on a lack-of-substantiation theory.  The centerpiece of Plaintiff's theory is *not* that including charcoal in toothpaste has been proven to be harmful to consumers, but rather that there is an alleged "lack of scientific substantiation" to support P&G's labels.  *E.g.*, Am. Compl. ¶ 8.  Each of Plaintiff's claims is predicated on the so-called "prevailing scientific literature regarding the lack of substantiation on safety and efficacy of activated charcoal in dental products."  *Id.* ¶ 44.

It is well settled, however, that "the simple allegation that a given statement is

unsubstantiated or unsupported by scientific evidence, standing alone, will not be enough for purposes of showing a deceptive or fraudulent representation." *Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 455–59 (E.D.N.Y. 2013) (surveying cases).  As one court aptly explained, "[t]here is a difference, intuitively, between a claim that has no evidentiary support one way or the other and a claim that's actually been disproved.  In common usage, we might say that both are 'unsubstantiated,' but caselaw (and common sense) imply that in the context of a false advertising lawsuit an 'unsubstantiated' claim is only the former." *Eckler v. Wal-Mart Stores, Inc.*, 2012 WL 5382218, at *3 (S.D. Cal. Nov. 1, 2012); *see also Kardovich*, 97 F. Supp. 3d at 138–41 (rejecting "scientific studies" as insufficient to "raise plausible inferences that Centrum's claimed health benefits are simply not true"); *Diebler v. SanMedica Int'l, LLC*, 488 F. Supp. 3d 169, 180 (D.N.J. 2020) (consumer fraud statutes do not recognize a "lack of substantiation" claim); *Bronson v. Johnson & Johnson, Inc.*, 2013 WL 1629191, at *8 (N.D. Cal. Apr. 16, 2013) (lack of substantiation theory "not cognizable"); *Scheuerman v. Nestle Healthcare Nutrition, Inc.*, 2012 WL 2916827, at *6–7 (D.N.J. Jul. 12, 2012) ("prior substantiation claims are not cognizable under" state consumer fraud acts).

The well-settled bar on lack of substantiation claims requires dismissal of the complaint. Although Plaintiff asserts that the "scientific studies" establish that charcoal is "a highly abrasive and harmful substance," *id.* ¶ 49, none of the studies cited by Plaintiff remotely supports that assertion.  To the contrary, the sources admit that "[l]arger-scale and well-designed studies are needed to establish conclusive evidence," Journal of the American Dental Association at 661, *supra* at 10 n.4, and "[o]ur research does not prove that activated charcoal is unsuitable for intraoral use," Academy of General Dentistry, *supra* at 10 n.5.  That distinction makes all the difference: the mere allegation that there is "no scientific evidence supporting a product's representation"

cannot support a plausible claim that the representation is *in fact* false or misleading. *Hughes*, 930 F. Supp. 2d at 458.

### D.      Plaintiff Cannot Challenge Statements on a Website that She Never Saw.

In passing, the complaint references statements on Crest's website regarding the charcoal toothpastes. *See* Am. Compl. ¶ 47. However, Plaintiff does not allege that she ever viewed the website statements, let alone that she did so before purchasing the toothpaste. Instead, she alleges that she reviewed statements "on the toothpaste packaging and labeling itself," and "made her purchase of the toothpaste in reliance thereon." *Id.* ¶ 22.

Plaintiff's failure to allege that she actually saw the website statements precludes her from maintaining any claim on those statements. To plead a GBL or fraud claim, for example, "a plaintiff must state in his complaint that he has seen the misleading statements of which he complains before he came into possession of the products he purchased." *Goldemberg v. Johnson & Johnson Consumer Co.*, 8 F. Supp. 3d 467, 480 (S.D.N.Y. 2014); *see also Lugones*, 440 F. Supp. 3d at 240 (dismissing GBL claims because plaintiffs failed to allege that they viewed defendants' website); *Quintana v. B. Braun Med. Inc.*, 2018 WL 3559091, at *8, *10 (S.D.N.Y. July 24, 2018) (similar as to fraud and GBL claims). The same is true for an express warranty claim. *Wells Fargo Bank, N.A. v. Bank of America, N.A.*, 2013 WL 372149, at *7 (S.D.N.Y. Jan. 21, 2013) (breach of express warranty requires the "warranty [to be] part of the basis of the bargain").

Statements that Plaintiff never saw cannot have been material to Plaintiff, cannot have been relied on by Plaintiff, and cannot have caused Plaintiff to purchase P&G's toothpaste. Any claims predicated on the website statements should therefore be dismissed. *Goldemberg*, 8 F. Supp. 3d at 480 ("Of course, if Plaintiff did not see the website and Facebook page beforehand, he could not have been injured by them."); *Douyon v. N.Y. Med. Health Care, P.C.*, 894 F. Supp. 2d 245, 263 (E.D.N.Y. 2012) (similar).

## II.     THE "STATE CONSUMER FRAUD ACTS" CLAIM SHOULD BE DISMISSED (COUNT 1).

Count 1 purports to assert misrepresentation claims under the consumer protection statutes of New York and nine other states.  Am. Compl. ¶ 118 & n.48.  This "claim" is defective for the reasons discussed above—*i.e.*, Plaintiff fails to allege a material misrepresentation.  The non-New York consumer protection violations should be dismissed for two additional reasons.

*First*, Plaintiff has not even attempted to allege how P&G violated the non-New York consumer protection statutes identified in the complaint.  Instead, Plaintiff simply lists the statutes that were supposedly violated, without alleging any particular facts that would support the varying elements of each claim.  The Second Circuit has rejected this type of "laundry list" pleading approach, holding that state consumer protection claims should be dismissed when "[t]he complaint does little more than list a couple dozen state statutes in alphabetical order by state, without pleading any of their elements."  *In re Aluminum Warehousing Antitrust Litig.*, 833 F.3d 151, 163 (2d Cir. 2016); *see also In re Trilegiant Corp.*, 2014 WL 1315244, at \*35 (D. Conn. Mar. 28, 2014) (dismissing state consumer protection claims where the complaint "merely lists several other states' consumer protection statutes without explaining how those statutes relate to the Defendants' alleged conduct in this case"); *McGarvey v. Penske Auto. Group*, 639 F. Supp. 2d 450, 452 (D.N.J. 2009) (dismissing state consumer protection claims where "[p]laintiffs do not even set forth the elements of the fifteen causes of action they assert . . . or explain how the fifteen listed statutes apply to the facts of this case"), *modified on other grounds,* 2010 WL 1379967 (D.N.J. Mar. 29, 2010); *cf. Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'").

*Second*, Plaintiff cannot advance non-New York consumer protection claims due to a lack of statutory standing.  "Statutory standing" refers to a situation in which, "although the plaintiff

has been injured and would benefit from a favorable judgment and so has standing in the Article III sense," she is suing under a statute that "was not intended to give h[er] a right to sue; [s]he is not within the class intended to be protected by it." *Kohen v. Pac. Inv. Mgmt. Co.*, 571 F.3d 672, 677 (7th Cir. 2009); *Robainas v. Metro. Life Ins. Co.*, 2015 WL 5918200 (S.D.N.Y. Oct. 9, 2015) ("For statutory standing, the question is whether the plaintiff has a cause of action under the statute.").[7] The consumer protection statutes invoked in Count 1 confer statutory standing only to residents, persons who are injured within the State, or persons who suffer injuries that are otherwise closely connected to the State. *See Chavez v. Wal-Mart Stores, Inc.*, 2014 WL 12591252, at *3–5 (C.D. Cal. Jun. 2, 2014) (surveying requirements of relevant statutes in Florida, Illinois, Michigan, Minnesota, Missouri, New Hampshire, New York, Rhode Island, and Washington); *Koehler v. Litehouse, Inc.*, 2012 WL 6217635, at *7 (N.D. Cal. 2012) (California); Mass. Gen. Laws ch. 93A, § 1(b) (Massachusetts).

Plaintiff cannot show that *she* has statutory standing to assert claims under the nine non-New York laws listed in Count 1 because it is "well settled" that a plaintiff "does not have standing to bring claims for violations of consumer fraud statutes of states other than . . . the state where she resides." *Jurgensen v. Felix Storch, Inc.*, 2012 WL 2354247, at *10 (S.D.N.Y. Jun. 14, 2012). As a citizen of New York who does not claim to have purchased the toothpaste anywhere other than in New York, *see* Am. Compl. ¶ 22, Plaintiff cannot establish that she suffered injury outside

---

[7]     The Second Circuit's decision in *Langan v. Johnson & Johnson Consumer Co.*, 897 F.3d 88, 91–93 (2d Cir. 2018), which considered whether the plaintiff had *constitutional (Article III) standing* to bring a class-action claim on behalf of consumers in states other than his state of residence, has no bearing on this question. *See, e.g.*, *Steel Co. v. Citizens for a Better Env.*, 523 U.S. 83, 96-97 (1998) (issue of statutory standing has "nothing to do with" Article III standing). To assert her claims, Plaintiff must have both statutory *and* constitutional standing. *See, e.g.*, *Thrasher-Lyon v. Ill. Farmers Ins. Co.*, 861 F. Supp. 3d 898, 908 (N.D. Ill. 2012) ("[S]atisfying Article III's requirements does not automatically confer statutory standing[,] nor is statutory standing a substitute for Article III standing." (quotations omitted)).

New York.  She therefore lacks the ability to pursue the (inadequately pled) non-New York statutory claims. To hold otherwise "would allow Plaintiff to engage in lengthy and expensive discovery with respect to alleged violations of state laws when the Court cannot be certain that any individual suffered an injury under those laws." *In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig.*, 1 F. Supp. 3d 34, 49–50 (E.D.N.Y. 2014); *see also Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 676–77 (E.D.N.Y. 2017) (same).

## III.    THE GBL CLAIMS SHOULD BE DISMISSED (COUNT 2 & 3).

To assert a claim under New York's GBL for deceptive trade practices (GBL § 349) or false advertising (GBL § 350), Plaintiff must show that P&G's actions (1) were consumer-oriented, (2) materially misleading, and that they (3) caused injury to the Plaintiff. *See Chufen Chen*, 954 F.3d at 500; *Goshen*, 98 N.Y.2d at 324 n.1.  As explained above, the GBL claims should be dismissed because Plaintiff fails to allege that P&G made a misleading statement that caused Plaintiff to purchase a charcoal toothpaste.  *See supra* at 6-13.

Plaintiff's GBL claims fail for a second and independent reason:  the complaint does not satisfy the "actual injury" element of her GBL claims.  The complaint asserts two purported theories of injury:  (i) Plaintiff "would not have purchased the Charcoal Toothpaste" absent the alleged misrepresentations and were therefore damaged by "the total purchase price," Am. Compl. ¶¶ 95, 99, and (ii) Plaintiff paid a "substantial price premium" for charcoal toothpaste over the non-charcoal toothpaste, *id.* ¶¶ 88, 94, 101.  Neither theory is sufficient.

As to the first theory, New York courts have rejected the idea that "consumers who buy a product that they would not have purchased, absent a manufacturer's deceptive commercial practices, have suffered an injury under General Business Law § 349."  *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 56, (1999).  Accordingly, although Plaintiff seeks a full refund of the "total purchase price" (*see* Am. Compl. ¶ 95), it is "well-settled" that a consumer "whose purchase was

allegedly procured through deception" cannot recover "a refund of the price" under GBL §§ 349 and 350.  *Dash v. Seagate Tech. (U.S.) Holdings, Inc.*, 27 F. Supp. 3d 357, 361 (E.D.N.Y. 2014); *see also Rodriguez v. It's Just Lunch Int'l,* 2018 WL 3733944, at *5 (S.D.N.Y. Aug. 6, 2018) (in GBL and fraud case, "[a] full refund is not . . . a tenable model of damages under the benefit-of-the-bargain rule").  This is because "deceived consumers may nevertheless receive—and retain the benefits of—something of value, even if it is not precisely what they believed they were buying." *Dash*, 27 F. Supp. 3d at 361–62; *Baron v. Pfizer, Inc.*, 840 N.Y.S.2d 445, 448 (App. Div. 2007) (plaintiff's allegation that she would not have purchased the product absent deceptive practices did not state a "cognizable injury").

As to the second theory, "[p]laintiffs alleging a 'price premium' theory must do more than merely allege that they paid a premium price for their product."  *Marshall v. Hyundai Motor Am.*, 334 F.R.D. 36, 59 (S.D.N.Y. 2019) (cleaned up).  Here, however, the complaint offers little more than the conclusory assertion that P&G charges a "substantial price premium" for charcoal toothpaste over non-charcoal toothpaste.  Moreover, the websites of third-party sellers of the Crest products cited in the complaint, *see* Am. Compl. at 20 n.44, show that P&G charges precisely the same price for each of the three charcoal toothpastes at issue here as it does for the non-charcoal counterparts of those products.  For example, Walmart sells both a 4.1 ounce tube of "Crest 3D White" with charcoal and a 4.1 ounce tube of "Crest 3D White" without charcoal for $3.97.[8] Similarly, Walmart sells a 4.1 ounce tube of "Crest ProHealth Gum Detoxify with Charcoal" and a 4.1 ounce tube of "Crest ProHealth Gum Detoxify Deep Clean" (the non-charcoal counterpart)

---

[8]      *Compare*  https://www.walmart.com/ip/Crest-3D-White-Charcoal-Whitening-Toothpaste-4-1-oz/958200779  *and*  https://www.walmart.com/ip/Crest-3D-White-Whitening-Toothpaste-Glamorous-White-4-1-oz/949010620 (last visited July 27, 2021).

at \$6.97.[9]  Likewise, Walmart sells a 4.1 ounce tube of "Crest 3d White Whitening Therapy Charcoal Fluoride Toothpaste with Hemp Seed Oil" for \$7.75, but the 4.1 ounce tube of "Crest 3d White Whitening Therapy Enamel Care" (the non-charcoal counterpart) costs \$14.29.[10]  Facially, no premium is being charged for the charcoal ingredient in the toothpastes.

Plaintiff attempts to demonstrate otherwise by comparing apples with oranges.   To establish a price premium, Plaintiff compares the charcoal toothpastes cited in the complaint with "Crest + Scope Outlast Complete Whitening Toothpaste, Mint," which allegedly costs \$4.19 for a 5.4 ounce tube.  Yet Plaintiff does not allege why this product is comparable to the charcoal toothpaste products lines cited in the complaint.  The relevant comparison is between charcoal toothpastes and non-charcoal toothpastes of the same product line.  As another judge in this Court has explained in an analogous case, "[c]omparing the Candy to Hot Tamales and Junior Mints is the saccharine equivalent of comparing apples with oranges [because s]uch a comparison tells the Court nothing about the value of the Candy, or whether the cost of the Candy was inflated by Mondelez's allegedly misleading packaging."  *Izquierdo v. Mondelez Int'l, Inc.*, 2016 WL 6459832, at \*7 (S.D.N.Y. Oct. 26, 2016).

## IV.   THE EXPRESS WARRANTY CLAIMS SHOULD BE DISMISSED (COUNT 4).

To state an express warranty claim under New York's Uniform Commercial Code, Plaintiff must allege that (1) P&G made a material statement amounting to a warranty; (2) Plaintiff relied on this warranty "as a basis" for purchasing P&G's products; (3) P&G breached this warranty; and

---

[9]       *Compare*   https://www.walmart.com/ip/Crest-Gum-Detoxify-Charcoal-Toothpaste-with-Fluoride-Mint-4-1-Oz/989896111   *and*   https://www.walmart.com/ip/Crest-Pro-Health-Gum-Detoxify-Toothpaste-Deep-Clean-4-1-oz/510336166 (last visited July 27, 2021).

[10]      *Compare*   https://www.walmart.com/ip/Crest-3D-White-Whitening-Therapy-Charcoal-Fluoride-Toothpaste-Hemp-Seed-Oil-Mint-4-1-oz/116904826   *and*   https://www.walmart.com/ip/Crest-3D-White-Whitening-Therapy-Fluoride-Toothpaste-Enamel-4-1-oz/183868527 (last visited July 27, 2021).

(4) the breach injured Plaintiff. *Lugones*, 440 F. Supp. 3d at 244. The common-law warranty claim likewise arises from the same statements on P&G's labels, *see* Am. Compl. ¶ 128, meaning it is "duplicative of [Plaintiff's] breach of express warranty claim" and "thus subject to dismissal on the same grounds," *Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d 540, 556 (S.D.N.Y. 2016); *see also McNulty*, 2020 WL 5658667, at *5 n.1 ("[A] New York common law breach of warranty claim is a breach of express warranty claim . . . .").[11]

As explained above, all of Plaintiff's warranty claims should be dismissed because there are no plausible allegations that P&G made any false or misleading statements. *See supra* at 6-13. They also should be dismissed because "[u]nder New York law, breach of warranty damages are usually measured by the benefit-of-the-bargain rule," *Bennett v. United States Tr. Co.,* 770 F.3d 308, 316 (2d Cir. 1985), and Plaintiff fails to allege that she paid any price premium. *See supra* at 18-19.

Plaintiff's warranty claims should also be dismissed because Plaintiff failed to allege that she provided timely notice, which is a "condition precedent" to any breach-of-warranty claim. *Lugones*, 440 F. Supp. 3d at 244–45 (emphasis omitted). A buyer who fails to notify the seller of an alleged breach of warranty "within a reasonable time after he discovers or should have discovered any breach" is "barred from any remedy." N.Y. U.C.C. § 2-607(3)(a) (emphasis added). Failure to allege timely notice is thus grounds for dismissing any breach-of-warranty claim. *See Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 544 (S.D.N.Y. 2013) (dismissing warranty claims because plaintiffs "failed to allege they provided [defendant] with timely notice

---

[11]    If Plaintiff is instead "asserting a different kind of common law warranty claim," one not "subsumed in or duplicative of" its express-warranty claim, *Catalano*, 167 F. Supp. 3d at 556, she has "not adequately pleaded" that claim, *McNulty*, 2020 WL 5658667, at *5 n.1. Plaintiff has not, for example, "allege[d] the existence of an actual contract" necessary to trigger this species of express warranty claim. *Catalano*, 167 F. Supp. 3d at 556.

of the alleged breach").

The complaint alleges that after this lawsuit was filed, Plaintiff sent a demand letter providing notice of her warranty claims.  *See* Am. Compl. ¶ 135.  For two reasons, this post-lawsuit letter cannot satisfy the requirement to provide timely notice.

*First*, the fact that Plaintiff provided notice *after* filing this lawsuit is not enough to satisfy a *pre*-suit notice requirement.  "The weight of authority in this circuit does not view a complaint to be by itself sufficient reasonable notice."  *Barton v. Pret A Manger (USA) Ltd.*, 2021 WL 1664319, at *12 (S.D.N.Y. Apr. 27, 2021); *see also Lugones*, 440 F. Supp. 3d at 233 (plaintiff could not add warranty claim in amended complaint when notice of that claim not provided before a lawsuit was filed).  In other states that require pre-suit notice of a warranty claim, courts have rejected the theory that providing notice of a warranty claim at the same time a lawsuit is filed satisfies the requirement to provide notice.[12]  The reason for this rule is obvious.  "Allowing Plaintiffs to provide Defendants with notice of a breach of warranty after Plaintiffs have filed the lawsuit would defeat a principal purpose of the notice requirement discussed above:  to allow defendants to 'arm [themselves]' for potential litigation or attempt settlement."  *Baldwin v. Star Sci., Inc.*, 2016 WL 397290, at *9 (N.D. Ill. Feb. 2, 2016).  The same result should be reached

---

[12]     *See Alvarez v. Chevron Corp.*, 656 F.3d 925, 932 (9th Cir. 2011) ("The purpose of giving notice of breach is to allow the breaching party to cure the breach and thereby avoid the necessity of litigating the matter in court.  This purpose would be completely undermined if it could be satisfied with the giving of post-suit notice." (citation omitted)); *Evans v. DSW, Inc.*, 2017 WL 7058232, at *1 (C.D. Cal. Sept. 14, 2017) (pre-suit notice requirement not satisfied when "'notice' was still received after the original complaint was filed," even though warranty claim was added in an amended complaint); *Jones v. Apple, Inc.*, 2016 WL 11647699, at *4 (S.D. Ill. Aug. 22, 2016) ("notice must issue prior to filing suit [and] cannot be satisfied after litigation has already begun"); *Adkins v. Apple, Inc.*, 147 F. Supp. 3d. 913, 920–21 (N.D. Cal. 2014) (finding that the plaintiff's letter to the defendant regarding a breach of warranty allegation did not constitute proper pre-suit notice because it was filed contemporaneously with the plaintiff's original complaint).

here.[13]

*Second*, even if a post-complaint letter were sufficient to provide notice in some circumstances, that says nothing about whether Plaintiff's letter was timely. "The question is not whether [Plaintiff] gave defendant enough notice before filing suit; it is whether [Plaintiff] gave reasonably prompt notice 'after [it] discovered or should have discovered the alleged breach.'" *Tyman v. Pfizer, Inc.*, 2017 WL 6988936, at *22 (S.D.N.Y. Dec. 27, 2017) (report and recommendation) (citation omitted), *adopted by* 2018 WL 481890 (S.D.N.Y. Jan. 18, 2018). The complaint cannot answer that question because it does not allege when Plaintiff purchased charcoal toothpaste. Nor does the complaint explain "why the products' alleged shortcomings would not have been readily discoverable so that she could have provided notice earlier." *Tomasino v. Estee Lauder Cos.*, 44 F. Supp. 3d 251, 261 (E.D.N.Y. 2014). Indeed, many of the public sources Plaintiff cites in an attempt to establish a misrepresentation date back years. *See* Am. Compl. ¶¶ 32-39, 82. Plaintiff's delay in these circumstances is unreasonable as a matter law. *See Tomasino*, 44 F. Supp. 3d at 261, 263 (dismissing without leave to amend where plaintiff delayed "two- to three years" in providing notice of the breach); *Bassaw v. United Industries Corp.*, 482 F. Supp. 3d 80, 87 (S.D.N.Y. 2020) (two-plus year delay in providing notice of breach was unreasonable as a matter of law).

## V.   THE FRAUD CLAIM SHOULD BE DISMISSED (COUNT 5).

To state a fraud claim under New York law, Plaintiff must allege (1) "a material misrepresentation or omission of fact"; (2) that P&G "knew to be false"; (3) which P&G made

---

[13]   Although the *Patellos* court reached a different conclusion and held that a complaint could constitute valid notice of a breach of warranty, it did so because the defendant "does not point to authority categorically so holding" otherwise. *Patellos*, 2021 WL 827769, at *7. As explained above, abundant authority rejects the idea that post-suit notice is sufficient. P&G respectfully submits that the weight of authority counsels against following *Patellos* on this issue.

"with the intent to defraud"; (4) upon which Plaintiff "reasonably relied"; and (5) which caused injury to Plaintiff. *Putnam Advisory Co.*, 783 F.3d at 402. These claims are subject to Rule 9(b)'s heightened pleading requirements. *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006).

Plaintiff's fraud claim should be dismissed for all of the reasons discussed above. First, Plaintiff's failure to identify the specific product she purchased means that she cannot satisfy Rule 9(b)'s requirement that she "specify the statements that the plaintiff contends were fraudulent" and "where and when the statements were made." *Lerner*, 459 F.3d at 290. Second, Plaintiff does not plausibly allege any misrepresentation about P&G's toothpastes containing charcoal. Finally, Plaintiff has failed to allege that she paid any price premium, and she may not seek to recover the full value of her purchase under a fraud theory. *See Chevron Corp. v. Donziger*, 2013 WL 3879702, at *2 (S.D.N.Y. Jul. 29, 2013) ("New York law awards only 'out of pocket' expenses in fraud causes, entitling plaintiffs to damages solely for their actual pecuniary losses.") (quoting *Kregos v. Associated Press*, 3 F.3d 656, 665 (2d Cir. 1993)).

In addition to those threshold defects, Plaintiff's fraud claim should also be dismissed because the complaint does not allege that P&G acted with fraudulent intent. A plaintiff alleging fraud must plead specific facts giving rise to a "strong inference of fraudulent intent, which may be established by (1) alleging facts to show that defendants had both motive and opportunity to commit fraud, or by (2) alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *In re Fyre Festival*, 399 F. Supp. 3d 203, 213 (S.D.N.Y. 2019) (cleaned up). "[C]onclusory and legal allegations, devoid of particularized facts giving rise to an inference of scienter, are insufficient . . . under Rule 9(b)." *Hesse*, 463 F. Supp. 3d at 473.

The amended complaint lacks any facts that would support a "strong inference" of fraudulent intent. As noted above, Plaintiff's theory of misrepresentation is that the addition of

charcoal to P&G's toothpastes renders the entire product unsuitable for consumers.  *Supra* at 6-13.  Plaintiff alleges no facts suggesting that P&G intentionally added an ingredient to its product that would make the entire product ineffective, and any assertion otherwise would defy common sense.   To be sure, Plaintiff alleges that P&G made misrepresentations "in order to induce consumers, including Plaintiff, to purchase the Charcoal Toothpastes over other products."  Am. Compl. ¶ 85.  But "simply alleging a defendant's self-interested desire to increase sales does not give rise to an inference of fraudulent intent." *Duran*, 450 F. Supp. 3d at 354 (dismissing similar fraud claims challenging a defendant's product labels); *Dash*, 27 F. Supp. 3d at 362 (conclusory allegation that "Defendant intentionally concealed and failed to disclose the true facts about" challenged product found insufficient); *Rodriguez v. Hanesbrand Inc.*, 2018 WL 2078116, at *7 (E.D.N.Y. Feb. 20, 2018) (dismissing fraud claim because "rank speculation does not support a strong inference of intent"); *Prickett v. New York Life Ins. Co.*, 896 F. Sup. 2d 236, 246 (S.D.N.Y. 2012) (allegation that "defendants were aware that their statements were false when they were made" was found too conclusory).

**CONCLUSION**

For the foregoing reasons, this Court should grant P&G's Motion to Dismiss and dismiss the amended complaint with prejudice.

Dated: July 27, 2021

Respectfully Submitted:

/s/ Henry Liu

Henry Liu (*pro hac vice*)
Andrew Soukup (*pro hac vice*)
Covington & Burling LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001
hliu@cov.com
asoukup@cov.com
(202) 662-6000

Gawon Go
Covington & Burling LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
ggo@cov.com
(212) 841-1000

*Attorneys for Defendant*
*The Procter & Gamble Company*