UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X
BELINDA HOUSEY, On Behalf of Herself and
All Others Similarly Situated,

        Plaintiff,

    - against -              **MEMORANDUM AND ORDER**
                                21 Civ. 2286 (NRB)
PROCTER & GAMBLE COMPANY,

        Defendant.
---------------------------------------X
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

    Plaintiff Belinda Housey brings this putative class action against defendant Procter & Gamble Company ("Procter & Gamble" or "P&G"), alleging that the defendant made false or deceptive statements regarding certain Procter & Gamble Crest® toothpastes that contain charcoal. Plaintiff alleges that Procter & Gamble's representations that these toothpastes would provide "enamel safe whitening," promote "healthier gums," and "gently clean[]" are false because the inclusion of charcoal in the toothpastes renders the toothpastes incapable of providing these benefits. Presently before this Court is the defendant's motion to dismiss pursuant to Rule 12(b)(6). For the following reasons, defendant's motion is granted.

I.   **Background**

   A. **Factual Background**[1]

   Defendant Procter & Gamble is a multinational consumer goods corporation.  FAC ¶ 23.  Among its products are Crest® toothpastes, some of which contain charcoal.  Id. ¶ 1.  Plaintiff specifically identifies three of these toothpastes as containing deceptive statements on their packaging: "the Crest® 3D White Whitening Toothpaste with Charcoal" (hereinafter, the "3D White Charcoal Toothpaste"), the "Crest® 3D White Whitening Therapy – Charcoal with Hemp Seed Oil" toothpaste, and the "Crest® Gum Detoxify Charcoal Toothpaste," (together, the "Charcoal Toothpastes").  Id. ¶ 3.  Images of the external packaging that depict the claims that plaintiff challenges are included below:



---

[1]   The following facts are principally drawn from the operative complaint, ECF No. 21 ("FAC"). For the purposes of the Court's ruling on the instant motion, the Court draws all reasonable inferences in plaintiff's favor.  See Koch v. Christie's Int'l PLC, 699 F.3d 141, 145 (2d Cir. 2012).





Id. ¶ 45. As depicted above, the packaging for these toothpastes includes the statements that the toothpastes respectively provide "enamel safe whitening," "gently clean[]" and promote "healthier gums." Id. ¶ 46. Plaintiff also alleges that Procter & Gamble makes the following statements on its website regarding its charcoal toothpastes: "Brighten your smile with Crest 3D White Charcoal Whitening Toothpaste. . . it also strengthens your tooth enamel. . ."; "Crest 3D White Whitening Therapy Gentle Clean black Charcoal Toothpaste gently whitens teeth by removing surface stains. . ."; "Crest Pro-Health and Sensitivity Charcoal toothpaste is clinically proven to promote healthier gums. . . ." Id. ¶ 47.

Plaintiff Belinda Housey is a citizen of New York who purchased the 3D White Charcoal Toothpaste. Id. ¶ 22. Prior to her purchase, Housey reviewed the "advertising claims and express warranties on the toothpaste packaging and labeling itself, and she made her purchase of the toothpaste in reliance thereon." Id. Plaintiff alleges that she paid a price premium for the product because of its purported benefits. Id. ¶ 99. At oral argument, plaintiff's counsel stated that plaintiff used the toothpaste for about a year. ECF No. 37 at 4:15-18. Plaintiff alleges that she did not, and could not, learn that the toothpaste did not provide the advertised benefits "until approximately March 2021 when she

learned about the issues alleged herein through media and news coverage." Id. ¶ 134.  Plaintiff alleges that she then learned that the toothpaste she purchased was "actually abrading her enamel" and "is not safe for use." Id. ¶ 102.

### B. Procedural History

Plaintiff filed this action on March 16, 2021.  ECF No. 1. On March 22, 2021, plaintiff sent a letter informing defendant that, because its representations on the Charcoal Toothpastes were false, it was in violation of the consumer protection statutes of various states and the express and implied warranty laws of all 50 states.  ECF No. 21-1 at 3-4.  On May 24, 2021, defendant filed a premotion conference letter requesting leave to file a motion to dismiss the complaint.  ECF No. 15.  Plaintiff replied on June 2, 2021.  ECF No. 18.  On June 3, 2021, this Court granted defendant leave to file its motion without the necessity of a premotion conference.  ECF No. 19.  In the same order, we granted plaintiff leave to amend her complaint within two weeks of the order to remedy any alleged deficiencies.  Id.  Plaintiff filed the first amended complaint on June 17, 2021.  ECF No. 21.  On June 23, 2021, defendant filed a proposed briefing schedule for its motion to dismiss.  ECF No. 23.  Consistent with that schedule, the instant motion was filed on July 27, 2021 and fully briefed on September 24, 2021.  See ECF Nos. 25-26 ("Mot."); 29 ("Opp."); 32.  The Court

held oral argument on defendant's motion on March 1, 2022.   ECF No. 37.

## II.   <u>Legal Standard</u>

### A. Federal Rule of Civil Procedure 12(b)(6)

On a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in plaintiff's favor.   <u>Kaplan v. Lebanese Canadian Bank, SAL</u>, 999 F.3d 842, 854 (2d Cir. 2021).   However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation."   <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).   "Factual allegations must be enough to raise a right of relief above the speculative level, on the assumption that all of the allegations in the complaint are true."   <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (internal quotations and citation omitted).   Thus, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."   <u>Id</u>. at 570.   "The plausibility standard requires more than a sheer possibility that a defendant has acted unlawfully, and mere conclusory allegations are not entitled to the assumption of truth."   <u>DiMuro v. Clinique Lab'ys, LLC</u>, 572 F. App'x 27, 32 (2d Cir. 2014) (citation omitted).

Here, plaintiff asserts claims for (i) violations of New York General Business Law ("GBL") §§ 349 and 350, along with the consumer fraud statutes of other states, (ii) breach of express

warranty, and (iii) intentional misrepresentation and fraud.  FAC
¶¶ 117-173.  We discuss the requirements of each claim below:

### B.  Plaintiff's General Business Law Claims

Section 349 of the New York's General Business Law ("GBL")
provides a cause of action for any person injured by "[d]eceptive
acts or practices in the conduct of any business, trade or commerce
or in the furnishing or any service."  N.Y. Gen. Bus. Law § 349(a),
(h).  "To make out a prima facie case under Section 349, a plaintiff
must demonstrate that (1) the defendant's deceptive acts were
directed at consumers, (2) the acts are misleading in a material
way, and (3) the plaintiff has been injured as a result."  Maurizio
v. Goldsmith, 230 F.3d 518, 521 (2d Cir. 2000) (citing Oswego
Laborers' Local 214 Pension Fund v. Marine Midland Bank, 85 N.Y.2d
20, 25 (1995)).  "Deceptive acts" are acts that are "likely to
mislead a reasonable consumer acting reasonably under the
circumstances."  Fink v. Time Warner Cable, 714 F.3d 739, 741 (2d
Cir. 2013).

Section 350 of the GBL prohibits "[f]alse advertising in the
conduct of any business, trade or commerce," and is analyzed under
the same "reasonable consumer" standard as Section 349.  Chufen
Chen v. Dunkin' Brands, Inc., 954 F.3d 492, 500 (2d Cir. 2020).
"While GBL § 350 relates specifically to false advertising, the
standard for recovery under § 350 . . . is otherwise identical to
section 349."  Petrosino v. Stearn's Prod., Inc., No. 16 Civ 7735

(NSR), 2018 WL 1614349, at *6 (S.D.N.Y. Mar. 30, 2018) (citation and internal quotation marks omitted).   Under either provision, "[i]t is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer."   Chufen Chen, 954 F.3d at 500 (quoting Fink, 714 F.3d at 741.)

### C. Plaintiff's Warranty Claims

Under New York law, an express warranty is in relevant part an "affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain."   N.Y.U.C.C. § 2-313(1)(a).   "To survive a motion to dismiss, a breach of express warranty claim must allege: (1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach."   Colpitts v. Blue Diamond Growers, 527 F. Supp. 3d 562, 589 (S.D.N.Y. 2021) (citation and internal quotation marks omitted).   New York law requires the buyer to provide timely notice to the seller of alleged breach of warranty.   See N.Y. U.C.C. § 2-607(3)(a) ("[B]uyer must within a reasonable time after he discovers or should have discovered any

breach notify the seller of breach or be barred from any remedy .
. . .").

### D. Plaintiff's Fraud Claims

Fraud claims are subject to the heightened pleading standard
of Rule 9(b), which requires a plaintiff to "(1) specify the
statements that the plaintiff contends were fraudulent, (2)
identify the speaker, (3) state where and when the statements were
made, and (4) explain why the statements were fraudulent." Mills
v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993).
Courts have summarized this standard as requiring a plaintiff to
plead the "who, what, when, where, and how: the first paragraph of
any newspaper story." Am. Federated Title Corp. v. GFI Mgmt.
Servs., Inc., 39 F. Supp. 3d 516, 520 (S.D.N.Y. 2014). In order
to plead a claim for fraud, plaintiff must allege that the
defendant made "(1) a material misrepresentation or omission of
fact; (2) which the defendant knew to be false; (3) which the
defendant made with the intent to defraud; (4) upon which the
plaintiff reasonably relied; and (5) which caused injury to the
plaintiff." Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC, 783
F.3d 395, 402 (2d Cir. 2015).

### III. Discussion

As outlined in the previous section, each of plaintiff's
claims requires plaintiff to allege that defendant committed a
deceptive act and that she was injured. See supra Section II.B-

D.  Because plaintiff has failed to meet these requirements, her claims are dismissed.

Before addressing the substantive defects with plaintiff's pleadings, we first clarify the scope of plaintiff's claims. Although plaintiff's complaint refers to three toothpastes, plaintiff only purchased one, the 3D White Charcoal Toothpaste.[2] Further, plaintiff alleges that she relied only on "the toothpaste packaging and labeling itself." FAC ¶ 22; see also ECF No. 37 at 5:5-10 (admitting plaintiff never saw Crest®'s website before purchasing the product). As defendant argues, plaintiff cannot be injured by relying on statements she never saw. See Goldemberg v. Johnson & Johnson Consumer Companies, Inc., 8 F. Supp. 3d 467, 480 (S.D.N.Y. 2014) ("To properly allege causation, a plaintiff must state in his complaint that he has seen the misleading statements of which he complains before he came into possession of the products he purchased. Of course, if Plaintiff did not see the website and Facebook page beforehand, he could not have been injured by them.") (citations omitted). We therefore focus initially on whether plaintiff has stated any claim based on the

---

[2]     In its motion to dismiss, defendant asserts that plaintiff's complaint should be dismissed because plaintiff has not properly alleged the specific product she purchased. Mot. at 6. After plaintiff clarified the product she purchased in her opposition papers, Opp. at 4, defendant did not pursue this argument on reply. In any event, the Court finds that plaintiff has sufficiently alleged the toothpaste she purchased by including a picture of the one toothpaste. See FAC ¶ 45. However, we note that plaintiff does not include any record of her purchase and was unable to provide any clarity at oral argument regarding when, where, or for how much plaintiff purchased the toothpaste. See ECF No. 37 at 3:8-4:5.

product that she actually purchased and the representations that she actually saw.[3]

## A. Plaintiff's Claims Fail Because Plaintiff Has Not Alleged a Deceptive Act

Plaintiff's central claim is that Procter & Gamble's Charcoal Toothpastes are deceptive because they cannot provide "enamel safe whitening," promote "healthier gums," or "gently clean[]" due to the inclusion of charcoal in the challenged toothpastes. Specifically, plaintiff's complaint alleges that there is "insufficient scientific evidence to substantiate [the Charcoal Toothpastes'] safety claims (as well as cosmetic and health benefits)" and that Procter & Gamble failed to disclose that "activated charcoal has <u>not</u> been substantiated as safe and effective for use in dentifrice." FAC ¶ 48 (emphasis in original). In her opposition to the motion to dismiss, plaintiff clarifies

---

[3]     Defendant also argues that plaintiff does not have standing to bring claims for products that she did not purchase and under the consumer protection laws of states of which she is not a citizen. <u>See</u> Mot. at 15-16.  In opposing this argument, plaintiff primarily relies on <u>Langan v. Johnson & Johnson Consumer Companies, Inc.</u>, which held that "as long as the named plaintiffs have standing to sue the named defendants, any concern about whether it is proper for a class to include out-of-state, nonparty class members with claims subject to different state laws is a question of predominance under Rule 23(b)(3), not a question of 'adjudicatory competence' under Article III."  897 F.3d 88, 93 (2d Cir. 2018) (citation omitted). In accordance with <u>Langan</u>, "courts in this Circuit have held that, subject to further inquiry at the class certification stage, a named plaintiff has standing to bring class action claims under state consumer protection laws for products that he did not purchase, so long as those products, and the false or deceptive manner in which they were marketed, are 'sufficiently similar' to the products that the named plaintiff <u>did</u> purchase." <u>Daniel v. Tootsie Roll Indus., LLC</u>, No. 17 Civ. 7541 (NRB), 2018 <u>WL</u> 3650015, at *5 (S.D.N.Y. Aug. 1, 2018) (citation omitted) (emphasis in original). However, where "the defendant did not actually injure a named plaintiff," the "claims of putative class members are too dissimilar to support standing." <u>Langan</u>, 897 F.3d at 94.  We therefore evaluate whether plaintiff was injured by the defendant before assessing any claims for products that she did not purchase.

that her complaint alleges not just that "the representations at
issue are unsubstantiated[,] but also that the evidence
affirmatively disproves them."  Opp. at 12.

    The breadth of plaintiff's claim is striking.  Although
plaintiff does not know the amount or composition of the charcoal
in the 3D White Charcoal Toothpaste, ECF No. 37 at 14:18-23,
plaintiff nevertheless claims that including charcoal in the
toothpaste, however minute the amount, renders the product unsafe
for use.  See, e.g., Opp. at 11 (arguing "the presence of charcoal
in the Products renders P&G's statements . . . false and
misleading.").  The expansiveness of this claim is underscored by
the fact that other comparable products in the Crest® 3D White
product line which contain no charcoal purport to provide identical
benefits to the 3D White Charcoal Toothpaste, including the
challenged "enamel safe whitening" claim.  In fact, in advance of
oral argument, the Court reviewed products in the 3D White product
line and found that there were at least five other Crest® 3D White
toothpastes that make identical claims and, with the exception
that some toothpastes contain blue coloring and the 3D White
Charcoal Toothpaste contains charcoal, had identical ingredients.
The only notable distinction on the packaging was the color of the
swatch on the box and the "flavor" (charcoal, radiant mint, arctic

fresh, glamorous white, etc.) advertised.[4]  Nevertheless, plaintiff
does not dispute that these other 3D White products are effective
and safe for use.  Because plaintiff does not plausibly plead that
charcoal is an unsafe ingredient to use in toothpastes or that its
presence in the 3D White Charcoal Toothpaste makes the toothpaste
unable to provide the advertised benefits, plaintiff's complaint
fails.

### 1.    Plaintiff's Articles Do Not Support Her Claims

Plaintiff relies principally on three articles in support of
her claim.[5]  These articles are a 2017 Journal of American Dental
Association article (the "2017 JADA article"),[6] a 2019 British
Dental Journal article (the "2019 BDJ article"),[7] and a 2015
Academy of General Dentistry study (the "2015 AGD study").[8]
Defendant correctly argues that none of these articles supports
plaintiff's claim that the charcoal toothpastes are unsafe.  We
address each seriatim.

---

[4]    These products were submitted to Chambers by the defendant at the Court's
request.  See ECF No. 34.  A photograph of the external packaging of these
products, as submitted to Chambers, is annexed to this opinion.
[5]    Plaintiff's complaint also references news and popular media articles,
including a Harper's Baazar article, that reference the potential negative
cosmetic effects of charcoal and cite to one of the journal articles plaintiff
relies on.  FAC ¶ 82.  For the same reasons discussed herein, we find that these
articles are insufficient to plead that the Charcoal Toothpastes are unsafe.
[6]    John K. Brooks et al., Charcoal and Charcoal-Based Dentifrices, 148 JADA
661 (2017); ECF No. 33-2.
[7]    Linda H. Greenwall et al., Charcoal-Containing Dentifrices, 226 British
Dental Journal 697, (2019); ECF No. 33-3.
[8]    Brantley McCarty et al., Activated Charcoal as a Whitening Dentifrice,
Presented at Academy of General Dentistry 2015 Annual Meeting, June 18–21, 2015,
San Francisco, CA, https://www.epostersonline.com/agd2015/node/72; ECF No. 33-1.

The 2017 JADA article is a literature review regarding charcoal and charcoal-based dentifrices. ECF No. 33-2 at 2. It finds that there were no "controlled clinical studies" that examine the safety and efficacy of charcoal dentifrices. Id. at 4. In fact, it cites no studies whatsoever regarding the abrasivity of a charcoal toothpaste, but instead refers to studies where the charcoal, without any toothpaste, was used to brush teeth. Id. at 3. Nor does it make reference to any Crest® toothpaste. As such, it has no relevance to the question of whether any Crest® toothpaste is abrasive such that it cannot provide "enamel safe whitening." Moreover, the review's ultimate conclusion is that there is "insufficient clinical and laboratory data to substantiate the safety and efficacy claims of charcoal and charcoal-based dentifrices. Larger-scale and well-designed studies are needed to establish conclusive evidence." Id. at 2.[9] But "the simple allegation that a given statement is

---

[9]     While plaintiff claims the 2017 JADA article supports its claim that the interaction of charcoal and fluoride leaves the fluoride "counteracted and rendered moot," FAC ¶ 35, the study itself makes no such assertion. Instead, it states, "[o]ne intriguing question is whether the fluoride in any of these 4 charcoal products would be rendered either chemically inert or minimally effective, as charcoal is a well-known absorptive agent capable of inactivating fluoride." ECF No. 33-2 at 10. In any event, plaintiff is preempted from making claims regarding the safety and efficacy of fluoride in the Charcoal Toothpastes because the FDA has issued a monograph regarding the efficacy of fluoride. See Patellos v. Hello Prod., LLC, 523 F. Supp. 3d 523, 530 (S.D.N.Y. 2021) (dismissing as preempted "any claims in the SAC that might be construed as relating to the safety or efficacy of fluoride in Hello's products, including based on the interaction of fluoride with other ingredients."). See also infra, pp. 24-25.

unsubstantiated or unsupported by scientific evidence, standing alone, will not be enough for purposes of showing a deceptive or fraudulent representation." Hughes v. Ester C Co., 930 F. Supp. 2d 439, 459 (E.D.N.Y. 2013). Further, plaintiff is clear that she is not arguing a lack of substantiation theory. See Opp. at 12 (stating that plaintiff is not arguing only that "the representations at issue are unsubstantiated[,] but also that the evidence affirmatively disproves them."). In sum, the 2017 JADA article does not support the conclusion that the challenged toothpaste is abrasive or unsafe for enamel.

The 2019 BDJ article, which cites the 2017 JADA article, similarly does not conclude that there are any risks to enamel from the use of Crest charcoal toothpaste. In fact, the article concludes that "[t]he abrasive potential of charcoal-based dentifrices is considered to depend on the nature, method of preparation, and particle size distribution of the charcoal included in the formulation." ECF No. 33-3 at 4; see also id. at 3 ("The charcoal in charcoal toothpastes marketed today is typically a fine powder form of activated charcoal . . . with variable abrasivity, depending on the source and methods used to prepare and mill the charcoal."). At oral argument, plaintiff's counsel acknowledged that she does not know what form the charcoal in the Charcoal Toothpastes takes or what quantity of charcoal is included in the 3D White Charcoal Toothpaste. ECF No. 37 at 14:21-

23.   Thus, the article provides no support for plaintiff's assertion that the Crest 3D White Charcoal Toothpaste that plaintiff purchased is harmful to enamel.

Finally, the 2015 AGD study does not support plaintiff's claims because it is not even about charcoal toothpaste.  Instead, it analyzed brushing teeth directly with activated charcoal mixed with a milliliter of water and found that "activated charcoal was more abrasive than a whitening toothpaste on acrylic resins."  ECF No. 33-1 at 4.  This is plainly inapplicable here, where the issue is whether a charcoal toothpaste (a different formulation of charcoal) would abrade enamel (a different substance).

Plaintiff is not saved by her counsel's suggestion at oral argument that, rather than explain why the 3D White Charcoal Toothpaste is harmful in the complaint, plaintiff could determine how it was harmful in discovery.  See ECF No. 37 at 14:21-25. This argument flies in the face of black letter law and the Supreme Court's decision in Ashcroft v. Iqbal, in which the Court held that a complaint cannot survive a motion to dismiss where the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct" because "the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

16

Since the articles do not support plaintiff's claims that the addition of charcoal renders the 3D White Charcoal Toothpaste unable to provide "enamel safe whitening," plaintiff has failed to allege that defendant has made a false or deceptive statement. See Manuel v. Pepsi-Cola Co., 763 F. App'x 108, 109 (2d Cir. 2019) (affirming dismissal of GBL and consumer fraud claims because "[n]one of the studies [cited in the complaint] purports to establish a causal relationship . . . to a degree that is sufficiently strong."). As such, plaintiff has failed to plead a claim under GBL §§ 349 or 350, a breach of warranty claim, or a fraud claim.

### 2.   The Court Can Properly Rely on the Articles

Perhaps in recognition of the weakness of her evidence, plaintiff argues that on a motion to dismiss, we should not consider the articles she cites, but merely her characterization of the evidence as alleged in her complaint. There is no legal basis for this position. Among the materials that a court may consider in deciding a Rule 12(b)(6) motion are: "(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference," and "(3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint." In re

Merrill Lynch & Co., Inc., 273 F. Supp. 2d 351, 356–57 (S.D.N.Y. 2003)(citations omitted), aff'd sub nom. Lentell v. Merrill Lynch & Co., 396 F.3d 161 (2d Cir. 2005).  When, as here, "a document relied on in the complaint contradicts allegations in the complaint, the document . . . control[s], and the court need not accept the allegations in the complaint as true."  Mizel Roth IRA on Behalf of Consol. Asset Funding 3 LP v. Unified Cap. Partners 3 LLC, No. 19 Civ. 10712 (NRB), 2021 WL 1164439, at *1 (S.D.N.Y. Mar. 25, 2021).  Where a plaintiff has chosen to use scientific evidence to state her claims, and that evidence does not support her claims, plaintiff has not plausibly pled her claims.  See Kardovich v. Pfizer, Inc., 97 F. Supp. 3d 131, 141 (E.D.N.Y. 2015) ("Plaintiffs have chosen to use scientific studies in an effort to raise plausible inferences that Centrum's claimed health benefits are simply not true. Because the studies cited do not so do, as discussed herein, all of plaintiffs' claims fail to meet the standards under both Rule 12(b)(6) and Rule 9(b).").

In support of her argument that this Court is precluded from examining the articles, plaintiff relies on two cases:  Quinn v. Walgreen Co., 958 F. Supp. 2d 533 (S.D.N.Y. 2013) and Pearson v. Target Corp., 2012 WL 7761986 (N.D. Ill. Nov. 9, 2012).  Both are distinguishable, and indeed, a comparison to these cases underscores the weakness of plaintiff's claims.

In both <u>Pearson</u> and <u>Quinn</u>, the challenged products were glucosamine and chondroitin supplements.  In those cases, the plaintiffs submitted studies showing that the active ingredients in the supplements arguably could not provide the advertised benefits, which the Court relied on in finding that the plaintiffs had plausibly pled their claims.  Specifically, in <u>Pearson</u>, the supplements advertised that they could "help rebuild cartilage" and "lubricate joints," and that the supplement "supports mobility and flexibility."  <u>Pearson</u>, 2012 WL 7761986, at *1 (N.D. Ill. Nov. 9, 2012).  Plaintiff submitted studies of products that had the same active ingredients as the challenged products and indicated that the products were ineffective at relieving symptoms or curing joint-related ailments.  <u>Id</u>. at *2.  In fact, the Court specifically relied on the studies in finding that the claims could survive a motion to dismiss.  <u>Id</u>. ("The fact that these studies looked at products that shared the same active ingredients-Glucosamine, Chondroitin, and MSM-makes Plaintiff's claim facially plausible.").  Similarly, in <u>Quinn</u>, the Court found that plaintiffs had stated a claim in part because the studies plaintiffs relied on "arguably support their conclusion[]." <u>Quinn</u>, 958 F. Supp. 2d at 543.  As such, neither case stands for the proposition that the Court should not consider plaintiff's purported scientific evidence.

### 3. __Patellos__ is Inapposite

Plaintiff also claims that the question of whether the instant case should survive a motion to dismiss is controlled by Patellos v. Hello Prod., LLC, 523 F. Supp. 3d 523 (S.D.N.Y. 2021). Like this case, Patellos dealt with a challenge to the advertised benefits of a charcoal toothpaste. However, Patellos differs from the instant case in several important respects.

First, in Patellos, the plaintiff claimed "to have particularly relied on the representations that the activated-charcoal ingredient had special properties that made it worthwhile to pay a price premium for Hello's toothpaste." Id. at 528; see also id. ("Hello's marketing materials for these products also emphasize the 'detoxifying and adsorptive properties of activated charcoal' in its toothpastes . . . .). By contrast, here, there are no statements on the toothpaste that plaintiff purchased that indicate that the addition of charcoal conveys any benefit to the efficacy or safety of the product. Every product in the Crest® 3D White line, including the products without charcoal, bears the same "enamel safe whitening" representation that plaintiff challenges. See ECF No. 37 at 9:13-10:3; supra fn. 4. In fact, with the exception of the "flavor" of the toothpaste (e.g., charcoal, radiant mint, arctic fresh, glamorous white) the toothpaste packaging for the 3D White Charcoal Toothpaste is identical to other products in the 3D White product line. Id.

Thus, in <u>Patellos</u>, where the representation plaintiff relied on was about the benefits that charcoal provided, it was sufficient for plaintiff to submit studies showing that charcoal could not provide the advertised properties.  Here, however, the claim is about whether the 3D White Charcoal Toothpaste provides "enamel safe whitening."  Plaintiff has not submitted any evidence that charcoal prevents the toothpaste as a whole from providing that benefit.

Second, in <u>Patellos</u>, the plaintiffs submitted evidence regarding the specific toothpaste at issue.  <u>See Patellos</u>, 523 F. Supp. 3d at 531 (citing statement from American Dental Association spokesperson regarding long-term risks of using Hello toothpastes to enamel).  In contrast, here, plaintiff has not submitted any evidence that the Crest® Charcoal Toothpastes are harmful or demonstrated that the studies are even applicable to the type or form of charcoal present in the challenged toothpastes.

In sum, because plaintiff fails to raise a deceptive statement, plaintiff's claims fail.[10]

---

[10]    Plaintiff also suggests that the Charcoal Toothpastes are harmful because the American Dental Association ("ADA") has failed to grant its "Seal of Acceptance" to the Charcoal Toothpastes but has granted it Seal of Acceptance to other P&G toothpaste products.  FAC ¶¶ 42-43.  But plaintiff has not pled that P&G even applied to receive a Seal of Acceptance for the Charcoal Toothpastes.  By itself, this allegation is insufficient to raise an inference that the toothpaste is harmful.  Further undermining this claim is the fact that a review of the Crest® 3D White product line reveals that none of the products appear to bear the ADA Seal of Acceptance.

### C.  Injury

Plaintiff's claims fail for the second and independent reason that she has not adequately alleged a claim of injury.

### 1.  Plaintiff Has Not Pled Personal Injury

Plaintiff's complaint contains a cursory allegation that her enamel was abraded through use of the Crest® toothpaste.  See FAC ¶ 102 ("For example, rather than safely whitening her teeth, the Charcoal Toothpaste was actually abrading her enamel, and is not safe for use.").  This is not sufficient to state a plausible claim of personal injury.  Plaintiff does not explain how or when she discovered the abrasion or provide any details about the nature or extent of the abrasion.  Further, plaintiff appears to have been a satisfied consumer of the 3D White toothpaste with charcoal until she heard of the potential risks of charcoal in the media. Plaintiff's complaint notes that plaintiff did not know and "could not have (and did not) discover Defendant's breach until approximately March 2021 when she learned about the issues alleged herein through media and news coverage."  Id. ¶ 134.  Moreover, at oral argument, plaintiff's counsel revealed that plaintiff used the toothpaste for "about a year." ECF No. 37 at 4:15-18.  By itself, plaintiff's conclusory allegation that the toothpaste was abrading her enamel is insufficient to adequately state a claim of injury.

### 2.   Plaintiff Has Not Pled a Price Premium

In an effort to avoid the legal consequences of an ipse dixit claim of personal harm, plaintiff does not actually rely on that claim in stating any of her causes of action.   Instead, plaintiff is clear that her primary theory is that she, and other members of a putative class, were injured by paying a price premium for the Charcoal Toothpastes.   At oral argument, plaintiff's counsel confirmed that "the main injury is the price premium theory that we allege."   ECF No. 37 at 5:20-21; see also FAC ¶ 119 (alleging plaintiff "lost money"); id. ¶ 133 (plaintiff has "been damaged in the amount of the purchase price"); id. ¶ 137 (plaintiff has "been damaged by the difference in value between the Charcoal Toothpastes as advertised and the Charcoal Toothpastes as actually sold, in an amount to be proven at trial"); id. ¶ 148 (class members "suffered injuries because, had they known the true facts, they would not have purchased the Charcoal Toothpastes"); id. ¶ 172 (plaintiff was "damaged in the economic loss of money spent (in an amount to be determined at trial")).

Plaintiff argues two variations on the price premium theory. First, plaintiff alleges that P&G charges a premium for the Charcoal Toothpastes compared to other Crest® toothpastes.   In her complaint, plaintiff compares the Charcoal Toothpastes to another Crest® product, the "Crest + Scope Outlast Complete Whitening Toothpaste, Mint," to argue that P&G charges a premium for the

Charcoal Toothpastes.  Id. ¶ 88 n. 44.  In response, defendant
argues that plaintiff is comparing the non-comparable "apples and
oranges" toothpaste products.  Mot. at 19.  Defendant maintains
the more appropriate comparison is to other products in the Crest
3D White product line, which advertise identical benefits to the
3D White Charcoal Toothpaste.  See Mot. at 8, 18.

Defendant has the better of these arguments.  Plaintiff cannot
compare the toothpaste at issue to a completely different product
in order to manufacture a price premium.  See Izquierdo v. Mondelez
Int'l, Inc., No. 16 Civ. 04697 (CM), 2016 WL 6459832, at *7
(S.D.N.Y. Oct. 26, 2016) (holding that merely alleging Sour Patch
Watermelon candy is "more expensive per ounce than other sweets on
the market brings [plaintiffs] no closer to stating a claim for
injury" because "[c]omparing the Candy to Hot Tamales and Junior
Mints is the saccharine equivalent of comparing apples with
oranges.").  Plaintiff does not justify why her comparison to the
Crest + Scope Outlast toothpaste is correct, and not the more
natural comparison to other toothpastes in the 3D White product
line.

Even more importantly, when the proper comparison is made,
there is no price premium.  At oral argument, plaintiff's counsel
admitted that each of the variations or "flavors" of the 3D White
toothpaste that plaintiff bought were sold at the same price.  ECF
No. 37 at 10:8-9 ("So I actually believe if the prices you saw are

the same as the prices I saw, they're all $4.99."). Thus, plaintiff's price premium argument totally fails.

At oral argument, plaintiff's counsel stated that his theory was not in fact that the plaintiff paid more for this product than for other toothpastes, but that "because the toothpaste was misrepresented as being enamel safe . . . and it abraded the teeth of the plaintiff, she did not receive the full value of the product." Id. at 6:17-20. However, as explained above, plaintiff has failed to plausibly allege that the toothpaste is harmful, and thus has failed to allege that she did not receive the full value of her purchase price.

Additionally, plaintiff is preempted from alleging that the toothpaste was ineffective such that she received no benefit from the toothpaste. The only active ingredient in the 3D White Charcoal Toothpaste (and in every product in the 3D White product line that the Court reviewed) is fluoride. The FDA has issued a monograph regarding fluoride, which "permits the sale, without a new drug application, of products the active ingredient of which is [fluoride] . . . and it provides that the product is not misbranded if it contains the claims regarding decay prevention set forth in the monograph." Canale v. Colgate-Palmolive Co., 258 F. Supp. 3d 312, 321 (S.D.N.Y. 2017); see also Anticaries Drug Products for Over-the-Counter Human Use; Final Monograph, 60 Fed. Reg. 52474, 52506 (Oct. 6, 1995) (codified at 21 C.F.R. pt. 355).

As such, plaintiff cannot claim that the charcoal prevented the fluoride from taking effect, such that plaintiff did not receive the benefit of her toothpaste.  See Patellos, 523 F. Supp. 3d at 530 (holding that "the Court dismisses as preempted, and as abandoned, any claims in the SAC that might be construed as relating to the safety or efficacy of fluoride. . . including based on the interaction of fluoride with other ingredients."). Plaintiff has therefore not pled a claim for injury. [11]

### IV.  **Remaining Claims**

Having found that plaintiff cannot state a claim for the toothpaste she actually purchased, we find that she cannot then bring a claim for products she did not purchase.  See Langan, 897 F.3d at 94 (holding that "claims of putative class members are too dissimilar to support standing against a particular defendant when that defendant did not actually injure a named plaintiff."). Moreover, there is not sufficient identity between the claims. Plaintiff challenges three different products, which all make different representations (i.e., "healthy gums," "gently clean[]," "enamel safe whitening.").   Where products have "different

---

[11]    Because plaintiff has not met the lower plausibility standard of Rule 8, we also find that plaintiff has not met the heightened standard for a 9(b) claim.  We note that in addition to failing to state a claim, the complaint also omits key details, such as when and where plaintiff bought the 3D White Charcoal Toothpaste, or how much she paid for it.  This is fatal to plaintiff's claims.  See Izquierdo, 2016 WL 6459832, at *9 (dismissing fraud claims because the complaint "fails to state when Izquierdo purchased the Candy, where precisely he purchased the Candy, and it fails even to specify how much Izquierdo paid for the Candy.") (emphasis in original).

ingredients" and the producer "made different advertising claims for each product," the Second Circuit has dismissed claims by purchasers of products that do not raise "nearly identical" concerns, because "[e]ntirely unique evidence will, therefore, be required to prove that the . . . products are false and misleading." DiMuro, 572 F. App'x at 29.[12]

V.    **Conclusion**

For the reasons set forth above, defendant's motion to dismiss is granted and the complaint is dismissed with prejudice.  The Clerk of the Court is respectfully requested to close this case on the Court's docket.

**SO ORDERED.**

Dated:    New York, New York
          March 24, 2022

                                        _____
                                            NAOMI REICE BUCHWALD
                                        UNITED STATES DISTRICT JUDGE

---

[12]    We do not reach the issue of whether plaintiff's notice, as required by her breach of warranty claim, is timely because plaintiff's breach of warranty claim fails on other grounds.  However, we note that "[t]he sufficiency and timeliness of notice is generally a question of fact for the jury." Patellos, 523 F. Supp. 3d at 533.

